STATE v. RALPH MONROE DUNCAN.

(Filed 24 March, 1965.)

**1. Automobiles § 59—**

Evidence tending to show that a driver was operating a vehicle at 65-75 miles per hour in a posted 45 miles per hour zone along a three lane street within the corporate limits of a municipality, that the street was wet and that as the driver attempted to pass a car traveling in the same direction he lost control, skidded sideways, and collided with a car traveling in the opposite direction, *is held* sufficient to be submitted to the jury on the question of culpable negligence.

**2. Same;   Automobiles § 41p—**

Evidence tending to show that immediately after the accident defendant was lying injured on the highway and the body of the owner of the car was found in the front seat of the car, together with testimony of an investigating officer, corroborated by two other officers who were present, that, upon being questioned in the hospital several hours after the accident, defendant seemed normal and talked in a normal manner, and recounted what happened while he was driving at the time of the accident, *is held* sufficient to support a jury finding that defendant was driving, notwithstanding substantial evidence introduced by defendant that the owner was operating the car.

**3. Automobiles §§ 15, 60—   G.S. 20-148 is not applicable to a three-lane highway.**

The accident in suit occurred on a three-lane highway having the northern and center lanes for westbound traffic and the southern lane for eastbound traffic, and occurred as the car driven west by defendant in the center lane went out of control as it was passing a car in the north lane, and skidded into a car traveling east in the southern lane. *Held:* An instruction charging the jury upon the statute requiring drivers of vehicles traveling in opposite directions to pass each other to the right, giving the other one-half of the main-traveled portion of the roadway as near as possible, must be held for prejudicial error as charging law having no pertinency to the facts in evidence.

**4. Criminal Law § 107—**

It is error for the court to charge upon a principle of law having no pertinency to the facts in evidence in the case.

APPEAL by defendant from *Froneberger, J.,* November 1964 Session of RUTHERFORD.

Defendant was indicted, tried and convicted of involuntary manslaughter in connection with the death on February 14, 1964, of Margaret L. Campbell as a result of a collision of automobiles. Judgment imposing a prison sentence of six years was pronounced. Defendant appealed.

*Attorney General Bruton and Assistant Attorney General Bullock for the State.*

*Hamrick & Hamrick for defendant appellant.*

BOBBITT, J. The collision occurred on Saturday, February 14, 1964, about 4:00 p.m., on U. S. Highway #74 (West Main Street) within the corporate limits (west end) of Forest City.

Approaching the point of collision, the hard-surfaced (east-west) highway consists of three traffic lanes. The northern and center lanes are for westbound traffic toward Spindale. The southern lane is for eastbound traffic toward the business district of Forest City. The posted speed limit was 45 miles per hour. It had been raining steadily. The highway was wet and slick.

A 1957 green Ford operated by Mrs. Paul Haines was traveling west in the northern lane. A Ford station wagon operated by W. C. Campbell was traveling east in the southern lane. The operator of a Chevrolet, traveling west in the center lane, was attempting to overtake and pass the Haines car. The occupants of the Chevrolet were Jack Tolley, the owner, and Ralph Monroe Duncan, the defendant.

We consider first whether the State's evidence was sufficient to withstand defendant's motion for judgment "as in case of nonsuit." G.S. 15-173.

Evidence favorable to the State tends to show the Chevrolet was being operated on said slick highway, attempting to overtake and pass the Haines car, at a speed of 65-75 miles per hour; that it "went into a fish-tail" and skidded sideways, out of control, "for 200 or 300 feet"; that, proceeding sideways, the left center of the Chevrolet crashed into the front of the oncoming Campbell station wagon; and that thereafter both cars involved in said collision struck the Haines car.

Two persons died instantly as a result of said collision, to wit, Mrs. (Margaret L.) Campbell, a passenger in said Ford station wagon, and Tolley, the owner-occupant of said Chevrolet. Others were injured.

After the collision, Tolley's body was in the front seat of his car. Defendant, "lying in the road," injured, was taken by ambulance to the Rutherford Hospital.

A person whose culpable (criminal) negligence in the operation of an automobile proximately causes death is guilty of manslaughter at least. The pertinent and oft-stated legal principles are well established. *S. v. Cope,* 204 N.C. 28, 167 S.E. 456; *S. v. Hancock,* 248 N.C. 432, 103 S.E. 2d 491. Based thereon, the evidence, when considered in the light most favorable to the State, *S. v. Orr,* 260 N.C. 177, 179, 132 S.E. 2d 334, was amply sufficient to support a finding that the driver of Tolley's Chevrolet was guilty of involuntary manslaughter.

With reference to nonsuit, the crucial question is whether the evidence is sufficient to support a finding that defendant (rather than Tolley) was such driver.

The State offered evidence tending to show: About three hours after the collision, two police officers of Forest City, Sgt. Robert Adams and Wheeler Lowrance, accompanied by State Highway Patrolman H. O. White, went to the Rutherford Hospital. After speaking to the "head nurse," they went to a ward room occupied by defendant and three other patients.

Adams testified: "I went into this room and walked up to the bed Ralph Duncan was in, and I said, 'Ralph, I am Sgt. Bob Adams of the Forest City Police Department.' He looked up and said, 'Hi, Bob.' I said, 'It looks like you got the worst end of this accident, got roughed up a bit.' He said, 'Yes, sir, I did.' I said, 'Can you tell me what happened in the accident, Ralph?' and he said, 'I started to pass a green car.' I said, 'A '57 Ford?' and he said, 'Yes, sir.' He said as he started to pass it it went into a skid, or something, and he blacked out; that's all he remembered. I said, 'How fast were you going?' He said, '50 or 55 miles an hour.' " Again: ". . . he seemed to be normal; he talked just like we are talking."

Lowrance, with reference to said conversation, testified: "Sgt. Adams, said, 'Just what happened?' Mr. Duncan said, 'I was passing a car, . . .' Sgt. Adams interrupted and asked him if it was a green Ford, and he said, 'I believe that's right.' Sgt. Adams asked him what happened, and he said he either lost control or went to sleep, he didn't remember anything after that." Again: "(H)e (defendant) said: 'I was passing another car and lost control or went to sleep, I don't know what.' " Lowrance testified defendant said "he was traveling 50 or 55 miles an hour"; that he (Lowrance) "did not observe anything ab-

normal about" defendant; and that defendant talked "in a normal voice, spoke distinctly," and "was well understood."

White testified he went into the ward room with Adams and Lowrance, heard Adams introduce himself and ask defendant what had happened. He testified: "I was not paying too close attention to the conversation. I was looking more or less around the room. I did hear Mr. Duncan say he lost control of the car, and I walked over to an old gentleman lying in another bed, talked to him and I did not hear any more. So far as I could tell, Mr. Duncan was talking normally." White testified he "did not investigate the accident."          . . .

Evidence for defendant is in conflict with the State's evidence in material respects with reference to what defendant told the officers. Defendant testified he had no recollection of any conversation with the officers in the hospital. Too, defendant testified Tolley was the driver and offered evidence tending to corroborate and support his testimony.

While conceding there was substantial evidence that Tolley was the driver, the evidence of Adams, Lowrance and White, when considered in the light most favorable to the State, was sufficient to support a jury finding that defendant was the driver. Hence, the motion for judgment as of nonsuit was properly overruled.

A portion of the charge, to which defendant excepted, is as follows: "(If a person intentionally violates the provisions of the statute and thereby causes the death of another, he is deemed to be criminally negligent and is guilty of involuntary manslaughter.) EXCEPTION #35. (Hence, if the jury should find beyond a reasonable doubt from the evidence that the defendant, while driving a motor vehicle upon the public highways, if you do find that he was driving, intentionally violated the statute designed to protect life and limb, then the defendant would be guilty of involuntary manslaughter.) EXCEPTION #36."

Defendant asserts the sentence to which Exception #35 is directed failed to explain that the instruction is applicable only to a statute designed to protect life and limb; and defendant asserts the sentence to which Exception #36 is directed contains no reference to proximate cause. While these contentions appear to be technical and without substantial merit, the quoted excerpts must be considered in relation to the particular statutes to which the court had directed the jury's attention.

The court had previously instructed the jury as follows: "Now, the statutes that the State is relying upon . . . the first I will call your attention to is meeting vehicles, which is 20-148, which reads as follows: 'A driver of a vehicle proceeding in an opposite direction shall pass each other to the right, each giving the other at least one-half of the main-traveled portion of the roadway as nearly as possible.'"

If G.S. 20-148 were applicable, certainly the driver of the Chevrolet intentionally violated its provisions. The driver of the Chevrolet, approaching the scene of collision in the center lane, did not give, and did not intend to give, the Campbell station wagon "at least one-half of the main-traveled portion of the roadway as nearly as possible." This statute was not relevant to the three-lane highway involved in this case. Indeed, absent negligence in other respects, defendant would have been entitled to an instruction to the effect that the driver of the Chevrolet was entitled under the law to use the center lane in attempting to overtake and pass the 1957 green Ford.

A safety statute, such as G.S. 20-148, is pertinent when, and only when, there is evidence tending to show a violation thereof proximately caused the alleged injuries or death. *Farfour v. Fahad,* 214 N.C. 281, 199 S.E. 521.

"It is established by our decisions that an instruction about a material matter not based on sufficient evidence is erroneous. (Citations.) And it is an established rule of trial procedure with us that an abstract proposition of law not pointing to the facts of the case at hand and not pertinent thereto should not be given to the jury. (Citations.)" *Childress v. Motor Lines,* 235 N.C. 522, 530, 70 S.E. 2d 558; *McGinnis v. Robinson,* 252 N.C. 574, 578, 114 S.E. 2d 365. We are constrained to hold that the instructions discussed above, in relation to the present factual situation, were erroneous and prejudicial. See *Powell v. Clark,* 255 N.C. 707, 122 S.E. 2d 706; *McGinnis v. Robinson, supra; Lookabill v. Regan,* 245 N.C. 500, 96 S.E. 2d 421.

The questions raised by defendant's other assignments of error may not recur upon a new trial. Hence, particular consideration thereof upon the present record is deemed inappropriate.

New trial.