STATE OF NORTH CAROLINA v. FREDDIE LEE

No. 125

(Filed 6 June 1975)

1. Criminal Law § 46— flight of defendant — nature of search by law officer

While generally testimony of a law enforcement officer to the effect that he searched for the accused without success after the commission of the crime is competent to show flight of the accused, whether such testimony does give rise to an inference that flight occurred depends, of course, on the nature and extent of the search.

2. Criminal Law § 46— flight of defendant — insufficiency of evidence

Evidence which tended to show that the sheriff merely looked for defendant while riding around on the street where defendant lived, that the sheriff never went to defendant's residence, that he made no inquiry as to defendant's whereabouts, that defendant customarily frequented other cities and the sheriff knew this fact, and that the sheriff was unable to locate defendant within six days was insufficient to support a jury instruction concerning flight of defendant.

3. Criminal Law §§ 46, 113— instruction on defendant's flight — insufficient evidence — new trial

Where the trial court in a criminal case permits the jury to return a verdict of guilty upon a legal theory or a state of facts not supported by the evidence, it is prejudicial error entitling the defendant to a new trial; therefore, defendant in this common law robbery prosecution is entitled to a new trial where the trial court gave instruction on flight of defendant which was unsupported by the evidence.

ON *certiorari* to review a decision of the Court of Appeals, 24 N.C. App. 666 (1975) which found no error in the trial and conviction of defendant on a charge of common law robbery

State v. Lee

before *James, J.,* at the May 27, 1974 Session of PERQUIMANS Superior Court.

Based upon an affidavit of the victim in this case, Aubrey Jordan, a warrant for the arrest of the defendant was issued on August 25, 1973. Jordan's affidavit duly charged defendant with common law robbery whereby some $140.00 was taken from Jordan's person. The warrant was executed on August 31, 1973, by Sheriff Julian H. Broughton. Defendant, having been properly indicted on October 29, 1973, was first tried and convicted at the October 29, 1973 Session of Perquimans Superior Court, but the Court of Appeals awarded him a new trial for the reason that he was not provided counsel. 21 N.C. App. 337, 204 S.E. 2d 192 (1974).

At his second trial defendant, upon being found guilty by the jury as charged, was sentenced to a term of imprisonment of not less than eight nor more than ten years. We allowed defendant's petition for writ of certiorari on April 2, 1975, and the case was argued in this Court on May 13, 1975.

The State's case in chief consisted entirely of the testimony of Aubrey Jordan, which was that in the early morning hours of August 25, 1973, on King Street in Hertford he was robbed by defendant and another person whom he could not identify. Jordan positively identified defendant as one of his assailants on direct examination, stating that he had known defendant since 1941 and had had occasion since then to see him two or three times each year. On cross-examination, however, he conceded that when immediately after the robbery he reported it to Robert Harvey, a Hertford policeman, and several hours later to Chief of Police B. L. Gibbs, he described his assailants to both Harvey and Gibbs but did not identify defendant by name to Harvey and wasn't sure whether he made such an identification to Gibbs.

Gibbs and Harvey testified for defendant that Jordan never identified defendant by name to either of them.

*Attorney General Rufus L. Edmisten and Associate Attorney Noel Lee Allen, for the State.*

*W. T. Culpepper III, for defendant appellant.*

EXUM, Justice.

The sole question raised in defendant's petition for certiorari is whether the Court of Appeals erred in deciding that there was sufficient evidence of defendant's flight after the robbery to support the following instructions of Judge James to the jury:

> "Now it is contended by the State, whether the evidence shows it is for you and you alone to say, that the defendant disappeared, and was not seen for five or six days, the officer's testimony being that he had a warrant for him and drove around through the area which he knew the defendant would normally be in, but did not see him, but made no inquiries as to where the defendant was, did not ask any person where he might be found, made no oral inquiry whatsoever and did not see him for five or six days, the State saying and contending that that was evidence of flight, or secluding himself.

> "I instruct you that evidence of flight may be considered by you together with all other facts and circumstances in this case in determining whether the combined circumstances amount to an admission or show perhaps a consciousness of guilt. However, I instruct you that proof of circumstances, that is proof of flight, in and of itself is not sufficient to establish the defendant's guilt."

The only evidence which could have conceivably supported these instructions was testimony of one of defendant's witnesses that defendant lived on King Street in Hertford and the following testimony for the State in rebuttal of the Sheriff of Perquimans County, Julian H. Broughton:

> "I recall a warrant coming into my hands in connection with this case now on trial. It was on a Saturday afternoon when I got the warrant from the Magistrate's office. I attempted to serve that warrant on the Defendant, Freddie Lee, that Saturday. I attempted to locate the Defendant for the purpose of serving the warrant on him by riding—just by riding and looking for him, didn't ask any questions if anybody had seen him, or anything. I was not able to locate the Defendant on this Saturday to serve the warrant. I looked for him again Sunday, but I did not find him on Sunday for the purpose of serving the warrant.

"I looked for Freddie Lee from the time the warrant came into my hands on Saturday the 25th of August until the 31st of August when I was able to locate him and serve the warrant. This was a period of six days; I looked for him everyday, mostly on King Street.

"I rode around and did not ask any questions each day. In looking for him I asked no questions of anybody. I had a particular reason for not making any verbal inquiry as to where Freddie Lee might be."

On cross-examination, however, Sheriff Broughton admitted that defendant sometimes divided his time between Hertford, Norfolk and New York. He said, "Freddie Lee has been going back and forth to Norfolk and New York. I have previously called and gotten in touch with him to bring him back from Norfolk before. At that time he was living in Norfolk. He was staying here and Norfolk."

[1] While generally "testimony of a law enforcement officer to the effect that he searched for the accused without success after the commission of the crime is competent" to show flight of the accused, *State v. Lampkins,* 283 N.C. 520, 196 S.E. 2d 697 (1973), whether such testimony does give rise to an inference that flight occurred depends, of course, on the nature and extent of the search. Where the search is likely to be unproductive because of the manner in which it was conducted or where the State's evidence affords a reason for failure to locate the accused which is as probable as that the accused was trying to avoid apprehension, the fruitless search is not evidence of flight. See, e.g., *State v. Jones,* 93 N.C. 611 (1885). On the other hand if the nature and extent of the search makes it reasonably likely that the accused will thereby be located, failure to find him is some evidence that has fled, or is otherwise trying to avoid apprehension. See, e.g., *State v. Lampkins, supra,* and authorities cited therein.

[2] Sheriff Broughton's search falls in the former category. He merely looked for defendant while riding around on the street where defendant lived. He never went to defendant's residence, nor for reasons known only to the sheriff did he make any inquiry as to defendant's whereabouts. This, together with the sheriff's own testimony that defendant customarily frequented other cities, leaves the question of whether defendant did indeed flee or otherwise try to avoid apprehension to utter

conjecture, speculation and surmise. He may well have been inside his residence when Sheriff Broughton rode by, or for six days, in Norfolk or New York where, to the sheriff's knowledge, it was not unusual for him to go.

"[E]vidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it was so . . . should not be left to the jury." *State v. Vinson,* 63 N.C. 335 (1869). Jury instructions based upon a state of facts not supported by the evidence and which are prejudicial to the defendant entitle the defendant to a new trial. *State v. Lampkins, supra; State v. McCoy,* 236 N.C. 121, 71 S.E. 2d 921 (1952) ; *State v. Wilson,* 104 N.C. 868, 10 S.E. 315 (1889).

Flight of defendant was, as we have indicated, not supported by the evidence. *State v. Lampkins, supra,* and *State v. Davis,* 237 Mo. 237, 140 S.W. 902 (1911), relied on by the State, are distinguishable on this point. In *Lampkins* the evidence was that the arresting officer checked at various "locations" throughout a particular area of town for some *four months* before he was able to locate the defendant. In *Davis* there was evidence that after an unsuccessful search for the defendant he was ultimately "captured" in another county.

The State argues and the Court of Appeals reasoned that even if there was no evidence of flight, since the testimony of Sheriff Broughton was before the jury without objection or motion to strike, the instructions of Judge James were not prejudicial and may even have been beneficial to defendant in that they clarified for the jury the weight to be accorded the sheriff's testimony.

We disagree with this reasoning. First, Sheriff Broughton's testimony, since it does not support an inference of flight, was incompetent and on proper motion should have been stricken. *State v. Jones, supra.* The question of its competency is not before us nor was it before the Court of Appeals only because defendant did not object to or move to strike it at trial.

[3] Second, the prejudice in the challenged instructions is clear. They permit the jury to consider Sheriff Broughton's testimony as evidence of flight—a circumstance, the jury was told, which it could find tended to show an admission or consciousness of guilt on the part of the defendant. In effect the instructions added a circumstance to the State's case against defendant not supported by either the State's or defendant's evi-

dence. We have uniformly held that where the trial court in a criminal case permits the jury to return a verdict of guilty upon a legal theory or a state of facts not supported by the evidence it is prejudicial error entitling the defendant to a new trial. *State v. Duncan,* 264 N.C. 123, 141 S.E. 2d 23 (1965); *State v. Gurley,* 257 N.C. 270, 125 S.E. 2d 445 (1962); *State v. Knight,* 248 N.C. 384, 103 S.E. 2d 452 (1958); *State v. Vinson, supra.* See also *State v. McCoy, supra.* The prejudice here is heightened because Aubrey Jordan's testimony, when considered in its entirety, and the testimony of Gibbs and Harvey make room for a good jury argument that Jordan had not consistently identified defendant as one of his assailants. Evidence of flight is not only competent but "often considered *material* . . . where there is a dispute or doubt as to the identity as to the perpetrator of the crime." *State v. Foster,* 130 N.C. 666, 675, 41 S.E. 284, 287 (1902). (Emphasis supplied.)

For the reasons stated the decision of the Court of Appeals is reversed and the cause remanded to that Court with direction to award a new trial to defendant.

Error and remanded.