STATE OF NORTH CAROLINA v. JBARRE JEQUIZ HOPE

No. COA07-702

(Filed 18 March 2008)

**1. Evidence— prior crimes or bad acts—victim's history of involvement with drugs**

The trial court did not err in a first-degree murder case by admitting the testimony of the victim's mother relating to the victim's history of involvement with drugs because: (1) the testimony relating to the victim's involvement with drugs bolstered the prosecution's theory that the victim's murder was drug-related and was relevant to show motive; (2) the victim's drug use was a threshold matter in the chain of events that ultimately led to his murder, including showing the victim's connection with defendant; (3) omission of testimony concerning the victim's drug use would have given the jury an incomplete understanding of the circumstances and connections among the players that led

to the murder; and (4) even if the evidence was inadmissible, the testimony was not unduly prejudicial when it was offered to show proof of motive.

## 2. Evidence— photographs—illustrative purposes—victim's appearance and health before death

The trial court did not err in a first-degree murder case by admitting a photograph of the victim because: (1) photographs used to illustrate a witness's testimony about a victim-relative's appearance and health prior to death have been held admissible, and the purpose of the photograph was to illustrate the testimony of the victim's mother about her son's appearance before he got involved with drugs; (2) contrary to defendant's contention, the trial court was not required to conduct a voir dire hearing as part of the N.C.G.S. § 8C-1, Rule 403 balancing test; and (3) although defendant contends the trial court abused its discretion by overruling defendant's objections in a summary manner and failing to conduct a voir dire hearing to determine admissibility, defendant failed to cite any support for this argument and cannot show the trial court's ruling was manifestly unsupported by reason or was so arbitrary that it could not have been the result of a reasoned decision.

## 3. Evidence— cross-examination—gang activity—relevancy

The trial court did not commit prejudicial error in a first-degree murder case by admitting during the cross-examination of defendant testimony relating to gang activity including questions about whether tattoos and burn marks on defendant's body indicated any connection to gang activity, because although the line of questioning was irrelevant when the State presented no evidence that gang activity was responsible for the victim's death, the State presented overwhelming undisputed evidence of defendant's guilt including: (1) eyewitness testimony placing defendant at the scene of the murder armed with a handgun as well as additional testimony that defendant and the second intruder were picked up by a taxi driver and driven from Raleigh to Durham less than an hour after the murder; (2) testimony by a co-conspirator providing the link between the second intruder and the victim, and the fact the second intruder's fingerprints were found inside the victim's bedroom; and (3) circumstantial evidence derived from extensive cell phone records documenting a series of calls between the second intruder and a phone identified as having been used by defendant as well as indicating de-

fendant's whereabouts before and after the crime. There was no reasonable possibility that the jury would have reached a different result had the State not presented this irrelevant evidence.

**4. Evidence— opinion testimony—pictures from cell phone were defendant**

The trial court did not err in a first-degree murder case by allowing a State's witness to state that pictures taken from a cell phone were of defendant rather than that they "appeared to be" defendant because: (1) defendant waived this argument since the basis for objection claimed at trial differed from the basis for objection claimed on appeal; (2) even if the objection to admissibility was properly before the Court of Appeals, it was not unduly prejudicial when the jury had the opportunity to examine and make its own determination as to the probative value of the cell phone pictures; and (3) defendant has not and cannot show a reasonable possibility that a different result would have been reached at trial had the objections to the testimony been sustained.

**5. Criminal Law— instruction—flight**

The trial court did not err in a first-degree murder case by instructing the jury on flight, even though defendant contends there was insufficient evidence that he took steps to avoid apprehension, because: (1) although defendant claims law enforcement knew he had family in the Grifton area and had no trouble locating him at his aunt's house, law enforcement testimony indicated that despite continuous search efforts it took thirty-four days to locate defendant at a relative's home in Grifton; (2) trial testimony established that defendant and his accomplice sped off immediately after the murder and that less than an hour later they arranged for a taxi to pick them up at a Raleigh hotel across town from the crime scene and take them to Durham; (3) phone calls made less than eight hours after the crime on a cell phone linked to defendant originated in Greenville (near Grifton), indicating that he had left Durham soon after arriving; (4) defendant's conduct did not seem to be a part of his normal pattern of behavior and could be viewed as steps to avoid apprehension; (5) regardless of whether defendant's home was his girlfriend's or relative's home, he returned to neither immediately after leaving the scene of the crime; (6) the fact that defendant argues another reasonable explanation for his conduct does not, in itself, render a flight instruction improper; and (7) even if improper, it was not unduly

prejudicial in light of the overwhelming evidence of defendant's guilt, and there was no reasonable possibility that a different result would have been reached absent the error.

Appeal by defendant from judgment entered 18 May 2006 by Judge A. Leon Stanback in Wake County Superior Court. Heard in the Court of Appeals 27 November 2007.

*Attorney General Roy Cooper, by Assistant Solicitor General John F. Maddrey, for the State.*

*Brian Michael Aus, for defendant.*

ELMORE, Judge.

On 18 May 2006, J'Barr'e Jequiz Hope (defendant) was convicted by a jury of first degree murder and sentenced to life imprisonment without parole. Defendant now appeals.

Kyle James Parrish was shot and killed at his home on 12 December 2004. Parrish shared the home with his girlfriend and a roommate, Chris Pennick. At the time of his murder, Parrish was selling drugs and addicted to heroin.

Pennick testified that Parrish left the house to buy cigarettes on 12 December 2004. Shortly thereafter, Pennick heard a knock at the door. The man at the door, later identified as defendant, asked to use Pennick's phone, explaining that his car had broken down. As Pennick turned around to retrieve his cell phone, defendant struck him with a pistol and he fell to the ground. Pennick was then restrained with a vacuum cleaner cord and defendant threatened to kill him if he moved. Defendant asked Pennick where Parrish and the money were located. Pennick testified that another man wearing an orange mask and carrying a gun entered the house.

When Parrish returned two men pulled him into the house and asked him for his money. Pennick heard the two men hitting Parrish and demanding money. Eventually, Pennick heard screaming, gunshots, and the sound of a window breaking. Pennick heard the two men leave, and then broke free from the vacuum cleaner cord to search for Parrish. Pennick found Parrish in the middle of the road where he cradled him in his arms until he was pronounced dead by the paramedics. Expert testimony established that Parrish suffered fatal gunshot wounds to the chest and lower back, together with multiple blunt force injuries and various sharp force injuries.

Pursuant to a plea agreement, Chad Aikens testified that he and Parrish used to buy heroin from Jamal Stokes. Aikens indicated that Stokes had seen Parrish with a bag of money at Aikens' house one night. Stokes later indicated his intent to break in Parrish's home and take the money. Aikens did not participate in the actual commission of the robbery, but he expected to get some money from the robbery proceeds for his assistance.

Chevella McNeil testified that she purchased a cell phone for defendant. Cell phone records and expert testimony indicated numerous calls on the day of the shooting between Stokes' phone and Aikens' phone and between Stokes' phone and defendant's phone. Records placed Stokes' phone at the scene of the crime and then at a Raleigh hotel. Eyewitness testimony established that a taxi driver picked up Stokes and defendant from a Raleigh hotel shortly after the time of the shooting and drove them to Durham. Records showed calls from Aikens' phone to the taxi company that picked up Stokes and defendant. Records also placed defendant's phone at the Raleigh hotel shortly after the shooting, in Durham that afternoon, and in the Greenville area shortly after midnight the next day. Authorities located defendant about a month later in a residential trailer in Grifton, near Greenville. Defendant was in the bedroom and his cell phone was within reach when he was arrested. Police obtained photographs from the cell phone.

[1] Defendant first argues that the trial court erred by admitting testimony by Parrish's mother relating to Parrish's history of involvement with drugs and a photograph of the victim. We disagree and overrule these assignments of error.

At trial, Lisa Parrish, Kyle Parrish's mother, testified that she had noticed changes in her son during the period between high school graduation and college. Ms. Parrish testified, "He'd been an honor roll student his first year of college. His sophomore year in February of 2003, I got a call from his counselor at school . . . ." She testified that Parrish admitted that he had started using drugs. She said, "He had gone from a[n] honor roll student to failing everything in a matter of about six weeks. Lost his scholarships and dropped out of Barton College." Ms. Parrish testified that she thought that he was getting better after taking him to counseling at Holly Hill Hospital in July of 2004. "His roommate, Chris Pennick[,] spent the whole night there with me when he was in with the counselors, and we left the next morning when the sun was coming up, and I thought he was getting some help after that." The State then admitted into evidence a photo-

graph of Parrish that was taken "before he got himself involved in all this mess[.]"

Defendant objected at trial to Ms. Parrish's testimony on grounds that "[w]e've heard some information about drug use and all that, and this man is deceased and we don't have to go through it again." Defendant objected to the admission of the photograph on relevancy and Rule 403 grounds. The trial judge overruled both objections. Defendant argued in his brief that the "information was irrelevant and only served to elicit sympathy for the victim with the jury and enrage it against Mr. Hope."

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2005). Generally, all relevant evidence is admissible. N.C. Gen. Stat. § 8C-1, Rule 402 (2005). Our Supreme Court has "said that in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible." *State v. Hill*, 347 N.C. 275, 294, 493 S.E.2d 264, 274 (1997) (citation and quotations omitted). Our Supreme Court

> has also said that it is not required that the evidence bear directly on the question in issue, and it is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known to properly understand their conduct or motives, or to weigh the reasonableness of their contentions.

*Id.* (citations, quotations, and alterations omitted). Furthermore, "[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted . . . [if it] is necessary to complete the story of the crime for the jury." *State v. Agee*, 326 N.C. 542, 548, 391 S.E.2d 171, 174 (1990) (citation and quotations omitted).

Thus, the relevancy of evidence is not limited, as defendant contends, to whether defendant was involved in Parrish's murder, nor is the inquiry limited simply to establishing any element of the crime. Here, Ms. Parrish's testimony related to her son's involvement with drugs. This involvement bolstered the prosecution's theory that Parrish's murder was drug-related. As such, Ms. Parrish's testimony was relevant to show motive, and was therefore admissible. Furthermore, Parrish's drug use was the threshold matter in the chain of events that ultimately led to his murder; drug use explained the

relationship between Parrish and Aikens, which was necessary to put in context the ultimate connection between Parrish and defendant. Omission of testimony concerning the victim's drug use would have given the jury an incomplete understanding of the circumstances and connections among the players that led to his murder.

Moreover, even were we to hold that the evidence was inadmissible, the testimony was not unduly prejudicial. Defendant urges that the evidence was unduly prejudicial in that the only purpose of the evidence was to "warp the judgment of the jury" by exciting sympathy for the victim and prejudice against defendant. We disagree.

"To establish prejudicial error, a defendant must show there was a reasonable possibility that a different result would have been reached had the evidence been excluded." *State v. Morgan*, 359 N.C. 131, 158, 604 S.E.2d 886, 903 (2004) (citing N.C. Gen. Stat. § 15A-1443(a)). "[W]here at least one of the [other] purposes for which the prior act evidence was admitted was [proper,] there is no prejudicial error." *Id.* (citations and quotations omitted) (alterations in original). One such proper purpose is to show proof of motive. *Id.* Though defendant contends that the testimony was calculated to prejudice one of the parties and prevent a fair and impartial trial, the State offered Ms. Parrish's testimony to show proof of motive. Accordingly, the trial court did not err by admitting it.

[2] Photographic evidence in particular is admissible in certain circumstances. Our Supreme Court has held that "it is not error to admit the photograph of a victim when alive." *State v. Goode*, 350 N.C. 247, 258, 512 S.E.2d 414, 421 (1999) (citations omitted). Furthermore, "[p]hotographs are usually competent to be used by a witness to explain or illustrate anything that it is competent for him to describe in words." *State v. Goode*, 341 N.C. 513, 539, 461 S.E.2d 631, 646 (1995) (citations and quotations omitted). Specifically, photographs used to illustrate a witness's testimony about a victim-relative's appearance and health prior to death have been held admissible. *See Goode*, 350 N.C. at 258, 512 S.E.2d at 421 (holding that a photograph introduced during the examination of the victim's daughter to illustrate her testimony about her parents' appearance and health prior to their deaths was admissible). Here, the purpose of the photograph was to illustrate Ms. Parrish's testimony about her son's appearance before he got involved with drugs.

Defendant also argues that even should this Court find the evidence relevant, the trial court should nevertheless have excluded it

because any probative value was substantially outweighed by the danger of unfair prejudice to defendant. *See* N.C. Gen. Stat. § 8C-1, Rule 403 (2005). Defendant argues that the trial court should have been required to conduct a *voir dire* hearing as part of a Rule 403 balancing test. Contrary to defendant's urging, *State v. Covington*, 290 N.C. 313, 226 S.E.2d 629 (1976), does not stand for such a proposition. *See id.* at 324, 226 at 638 (clarifying that when a defendant challenges the admissibility of identification testimony, "[f]ailure to conduct the voir dire [sic] . . . does not necessarily render such evidence incompetent").

Defendant contends that the trial judge abused his discretion by overruling defendant's objections in a summary manner and failing to conduct a *voir dire* hearing to determine admissibility. However, defendant cites no support for this argument and cannot show how the trial judge's ruling was "manifestly unsupported by reason or [was] so arbitrary that it could not have been the result of a reasoned decision." *State v. Peterson*, 179 N.C. App. 437, 463, 634 S.E.2d 594, 614 (2006) (citation and quotations omitted), *aff'd*, 361 N.C. 587, 652 S.E.2d 216 (2007). For these reasons, we overrule these assignments of error.

**[3]** Defendant next argues that the trial court erred in allowing the admission of testimony relating to gang activity gained through cross-examination of defendant because it was irrelevant and unduly prejudicial. Specifically, the prosecution cross-examined defendant about tattoos and burn marks on defendant's body to determine if they indicated any connection to gang activity. Defendant objected multiple times to this series of questions and was overruled. Defendant denied any connection to gang activity and explained that the tattoos and burn marks on his body did not symbolize any connections to gangs. We agree with defendant that the testimony was irrelevant, but disagree that it was unduly prejudicial.

We note that the State raises no argument that the line of questioning was relevant. The line of questions was irrelevant because the State presented no evidence that gang activity was responsible for Parrish's death. Rather, the State's evidence tended to show that Parrish was killed as a result of a plan by defendant and two accomplices to steal his money.

The question then remains whether the improperly admitted evidence was unduly prejudicial. Even when a trial court admits evidence in error, a

defendant has the burden to show not only that it was error to admit this evidence, but also that the error was prejudicial: A defendant must show that, but for the error, a different result would likely have been reached. Where there exists overwhelming evidence of defendant's guilt, defendant cannot make such a showing; this Court has so held in cases where the trial court improperly admitted evidence relating to defendant's membership in a gang.

*State v. Gayton*, 185 N.C. App. 122, 125-26, 648 S.E.2d 275, 278 (2007) (citations, quotations, and alterations omitted).

The State presented overwhelming, undisputed evidence of defendant's guilt. *See id.*, 185 N.C. App. at 126, 648 S.E.2d at 279 ("Thus, even had all the evidence as to gangs been excluded, the State presented enough evidence—unchallenged to this Court—that the [crime was committed]."). This evidence included eyewitness testimony placing defendant at the scene of the murder armed with a handgun as well as additional testimony that defendant and the second intruder were picked up by a taxi driver and driven from Raleigh to Durham less than an hour after the murder. Testimony by a co-conspirator provided the link between the second intruder and the victim, and the second intruder's fingerprints were found inside the victim's bedroom. Additional circumstantial evidence derived from extensive cell phone records documented a series of calls between the second intruder and a phone identified as having been used by defendant as well as indicating defendant's whereabouts before and after the crime.

On this evidence, we cannot find a reasonable possibility that the jury would have reached a different result had the State had not presented evidence relating to gang affiliation. *See* N.C. Gen. Stat. § 15A-1443(a) (2005). Because the testimony on any matters relating to defendant's alleged gang affiliation, though irrelevant, was not unduly prejudicial, we overrule these assignments of error.[1]

**[4]** Defendant next argues that the trial court erred in permitting the State's witness to give his opinion that pictures taken from a cell phone were of defendant. We overrule this assignment of error.

---

1. Though the State raises a colorable argument that defendant is barred from challenging this line of questioning on appeal due to failure to object to an earlier line of questioning. Even assuming *arguendo* that defendant failed to properly object in the first instance, the questioning is not unduly prejudicial for the reasons already stated.

At trial, defendant objected to the witness's statement that the picture "is" defendant, rather than saying it "appears to be" defendant. Defendant argued at trial, "My only objection would be that it appears to be rather than saying that it is [defendant]." The trial judge overruled the objection and allowed the issue to be addressed on cross-examination. In his brief, defendant argues that the State's witness's testimony as to the identity of the person in the photograph was improper opinion that should not have been admitted.

In objecting at trial to how the witness phrased his answer, defendant objected not to admissibility but to the weight of the testimony. That the trial judge allowed cross-examination on the matter indicates that it recognized that defendant's stated basis for the objection went to weight and not to admissibility. Because defendant objected only to the form of the witness's answer, we do not consider the question of whether the trial court erred in permitting the witness to give his opinion as to identification, as that question is not properly before this Court. As is often stated, "[W]here a theory argued on appeal was not raised before the trial court, 'the law does not permit parties to swap horses between courts in order to get a better mount [on appeal].' " *State v. Sharpe*, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (quoting *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)) (additional citations omitted); *see also* N.C.R. App. P. 10(b)(1) (2007). Because the basis for objection claimed at trial differs from the basis for objection claimed on appeal, defendant waives his claim.

Moreover, even were we to hold that the objection to admissibility was properly before us, and even if we found error, such error was not unduly prejudicial. During deliberations, the jury requested and was permitted to examine both the cell phone and the printed copies of pictures stored on the phone. Thus, the jury had the opportunity to make its own determination as to the probative value of the cell phone pictures. Defendant argues that in the absence of the witness's opinion, there was a reasonable possibility that the jury would have concluded that the pictures were of his brother, who defendant argues is easily mistaken for him, and would have therefore concluded that his brother, and not defendant, was involved in the murder. This argument is unconvincing. Defendant has not and cannot show a reasonable possibility that a different result would have been reached at trial had the objections to the testimony been sustained. *See* N.C. Gen. Stat. § 15A-1443(a) (2005). We overrule this assignment of error.

**[5]** Finally, defendant argues that the trial court improperly gave the jury an instruction on flight because there was no evidence that defendant took steps to avoid apprehension. We disagree and overrule this assignment of error.

"A flight instruction is appropriate where 'there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime[.]' " *State v. Kornegay*, 149 N.C. App. 390, 397, 562 S.E.2d 541, 546 (2002) (quoting *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977)) (alteration in original). "The fact that there may be other reasonable explanations for defendant's conduct does not render the instruction improper." *Irick*, 291 N.C. at 494, 231 S.E.2d at 842. "[T]he relevant inquiry [is] whether there is evidence that defendant left the scene of the [crime] and took steps to avoid apprehension." *State v. Levan*, 326 N.C. 155, 165, 388 S.E.2d 429, 434 (1990).

In *State v. Shelly*, 181 N.C. App. 196, 638 S.E.2d 516, *disc. review denied*, 361 N.C. 367, 646 S.E.2d 768 (2007), this Court held that a jury instruction on flight was proper when the defendant left the scene of the crime and stayed overnight at his cousin's girlfriend's house, "an action that was not part of Defendant's normal pattern of behavior and could be viewed as a step to avoid apprehension." *Id.* at 209, 638 S.E.2d at 526. In contrast, our Supreme Court, in *State v. Thompson*, 328 N.C. 477, 490, 402 S.E.2d 386, 393 (1991), held that there was insufficient evidence to support an instruction on flight. The defendant, a military serviceman, left the scene of the crime and went to the military base where he was stationed, essentially "return[ing] to a place where, if necessary, law enforcement officers could find him." *Shelly*, 181 N.C. App. at 209, 638 S.E.2d at 525. He "essentially . . . returned home." *Id.*, 638 S.E.2d at 526.

Defendant argues that he essentially went home when he went to stay with his family in Grifton over the Christmas holiday. He said that Grifton, where he was taken into custody, was where his extended family resided and was, in effect, home when he was not living at his girlfriend's house in Durham.

Despite defendant's contention, there is sufficient evidence that he took steps to avoid apprehension. Though defendant claims that law enforcement knew he had family in the Grifton area and had no trouble locating him at his aunt's house, testimony by law enforcement indicated that, despite continuous search efforts, it took thirty-four days to locate defendant at a relative's home in Grifton. Addi-

N.C. STATE BAR v. GILBERT

[189 N.C. App. 320 (2008)]

tionally, trial testimony established that before heading to Grifton, defendant and his accomplice "sped off" immediately after the murder and that less than an hour later they arranged for a taxi to pick them up at a Raleigh hotel across town from the crime scene and take them to Durham. Phone calls made less than eight hours after the crime on a cell phone linked to defendant originated in Greenville (near Grifton), indicating that he had left Durham soon after arriving.

Defendant's conduct did not seem to be a part of his normal pattern of behavior and could be viewed as steps to avoid apprehension. Moreover, regardless of whether defendant's home can be regarded as his girlfriend's or his relative's home, he returned to neither immediately after leaving the scene of the crime. This evidence provides a sufficient basis for finding that defendant made efforts to avoid apprehension after leaving the scene of the crime. That defendant argues another reasonable explanation for his conduct does not, in itself, render a flight instruction improper.

Even if improper, it was not unduly prejudicial so as to amount to reversible error. In light of the overwhelming evidence against defendant, which we have already noted, we find no reasonable possibility that a different result would have been reached had the error been excluded. *See* N.C. Gen. Stat. § 15A-1443(a) (2005). We therefore overrule this assignment of error.

Having conducted a thorough review of the record and briefs, we find no prejudicial error.

No prejudicial error.

Judges WYNN and BRYANT concur.