McCULLOUGH, Judge.
 

 *393
 
 Luis Alberto Villa Campos ("defendant") appeals from judgment entered upon his conviction of one count of intentional child abuse resulting in serious physical injury to a child. For the reasons stated herein, we grant a new trial.
 

 *394
 
 I.
 
 Background
 

 At the time of the incident giving rise to this case, the victim ("infant") was a three-month-old infant. She lived primarily with defendant's mother, Maria Campos Jimenez ("Jimenez"), who cared for the infant and defendant's two children, a two-year-old boy and a six-year-old girl. Although defendant did not live at Jimenez's home on a regular basis, he did help care for the children.
 

 Defendant was in a relationship with Ruby Hoard ("Hoard"), the mother of his children. Hoard was also the mother of the infant, who was not biologically related to defendant despite his belief otherwise at the time of the incident.
 

 On 1 April 2014, defendant returned the infant to Jimenez's home after she spent a few days with defendant and Hoard at Hoard's residence. Upon her arrival to Jimenez's home, the infant was asleep in her car
 
 *494
 
 seat. As Jimenez stood in the kitchen preparing dinner, she heard the infant begin to cry persistently. In checking the infant, Jimenez took her out of the car seat, placed her on the sofa, and gently undressed her, causing the crying to intensify. After removing the infant's clothing, Jimenez noticed swelling on the infant's leg. The infant continued crying to a degree that convinced Jimenez to take the infant to the Emergency Department at Catawba Valley Medical Center ("CVMC"). Jimenez spoke with defendant en route to the hospital and inquired about the cause of the infant's swollen leg. Defendant said he was not sure what caused the swelling.
 

 Dustin Otterberg ("Otterberg"), a physician assistant at CVMC trained in patient examination, evaluated the infant when she was admitted to the Emergency Department. Otterberg confirmed the significant swelling on the infant's lower right leg and found further swelling on both of the infant's forearms. Anytime Otterberg handled these areas, the infant would grimace in pain and cry, leading Otterberg to order a full-body X-ray of the infant. The results of the X-ray showed a fracture to the infant's right tibia, fractures to both the ulna and radius bones in her left forearm, and a slight bend in the bone of her right forearm, known as a plastic deformity.
 

 CVMC transferred the infant to Wake Forest Baptist Medical Center ("WFBMC"), where Dr. Stacy Briggs ("Dr. Briggs"), a pediatrician and member of the Child Protection Team, which evaluates children in cases of non-accidental trauma, reviewed the X-ray of the infant with a pediatric radiologist and confirmed the injuries. Dr. Briggs testified that the injuries were non-accidental due to the infant's inability as a
 
 *395
 
 three-month-old baby to walk, roll over, or move in a manner that could conceivably cause multiple fractures to her arms and leg. The infant remained at WFBMC from 1 April until 3 April, when she was discharged to the Catawba County Department of Social Services ("DSS").
 

 While the infant was evaluated at CVMC on the evening of 1 April, Investigator Jason Reynolds ("Reynolds") traveled to Jimenez's home for photo documentation and subsequently met defendant around 10:00 p.m. after passing him in his vehicle. Reynolds asked defendant if he would voluntarily come to the Sheriff's Office that night to discuss the events surrounding the infant's admission to CVMC. After initially agreeing, defendant later chose not to appear at the Sheriff's Office.
 

 Between 1 April and 11 April, the record indicates no attempt in which Reynolds tried to locate defendant. According to defendant, Hoard had a criminal court date on 12 April and both Hoard and he reserved a hotel room in Catawba County for 11 April to better facilitate Hoard's arrival at the courthouse the following day. The Catawba County Sheriff's Office learned that defendant and Hoard were located at the hotel, and police officers arrested both that day. The record on appeal indicates that an arrest warrant for child abuse was not issued until 17 April 2014.
 

 While in jail, defendant spoke with Jennifer Owen ("Owen"), a forensic investigator with DSS, and recounted what he thought could have caused the injuries to the infant. According to defendant, he was arguing with Hoard over her apathy and refusal to help with the children at some point during the last few days of March 2014. Defendant told Hoard he was taking the infant and the children back to Jimenez's home. After defendant placed the infant into her car seat, he turned to pick up the diaper bag, when Hoard suddenly gripped the infant's arms around the bicep area and attempted to pull her out of the car seat. Defendant swung back around and struggled with Hoard over the infant. Defendant and Hoard continued pulling and pushing on the infant for approximately twenty seconds. Defendant admitted that Hoard's and his contact with the infant during their argument could have resulted in the infant's injuries.
 

 On 7 July 2014, a Catawba County Grand Jury indicted defendant on one count of intentional child abuse resulting in serious physical injury. On 18 May 2015, the case came on for trial in Catawba County Superior Court before the Honorable Jeffrey P. Hunt.
 

 *495
 
 At the close of evidence, the trial court instructed the jury on the elements of felony child abuse and the lesser-included offense of
 
 *396
 
 misdemeanor child abuse. The pattern instruction for felony child abuse required an intentional assault, but failed to include a definition for assault. The court, therefore, instructed on assault and stated in part:
 

 Ladies and gentlemen, I instruct you that as to assault which is mentioned in the earlier instruction I just gave, there are two elements to an assault under North Carolina law.
 

 First, ... the State would have to prove beyond a reasonable doubt that the defendant assaulted the victim by handling the alleged victim in such a manner as to cause or result in the various injuries, including broken bones, testified to in this case.
 

 And second, the State would have to prove as a second element beyond a reasonable doubt that the defendant acted intentionally.
 

 The second element of the assault instruction prompted the court to deliver an explanation of intent to the jury as follows:
 

 Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred. You arrive at the intent of a person by such just and reasonable deductions from the circumstances proven as a reasonably prudent person would ordinarily draw....
 

 Over defendant's objections, the court then instructed on flight, which it deemed a "close call":
 

 Now, the State contends and the defendant denies, that the defendant fled. Evidence of flight may be considered by you together with all other facts and circumstances in this case in determining whether the combined circumstances amount to an admission or show of a consciousness of guilt. However, proof of this circumstance is not sufficient, in and of itself, to establish the defendant's guilt.
 

 The jury proceeded to deliberate, and shortly thereafter asked the court for a definition of "intentionally"-the second of the two elements of assault required to convict defendant on felony child abuse. In response, the court read its original instruction on intent.
 

 On 20 May 2015, the jury returned a verdict finding defendant guilty of intentional child abuse resulting in serious physical injury. On 24 August 2015, the trial court entered judgment sentencing defendant
 
 *397
 
 to a term of 64 months to 89 months imprisonment. Defendant gave notice of appeal in open court.
 

 II.
 
 Discussion
 

 On appeal, defendant only raises issues regarding the trial court's instructions to the jury. Specifically, defendant argues that the trial court (1) erred in using the term "handling" to describe the required element of assault for intentional child abuse, and (2) erred in giving an instruction on flight. We address defendant's arguments in reverse order.
 

 "[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed
 
 de novo
 
 by this Court."
 
 State v. Osorio,
 

 196 N.C.App. 458
 
 , 466,
 
 675 S.E.2d 144
 
 , 149 (2009). "The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence."
 
 State v. Cameron,
 

 284 N.C. 165
 
 , 171,
 
 200 S.E.2d 186
 
 , 191 (1973),
 
 cert. denied,
 

 418 U.S. 905
 
 ,
 
 94 S.Ct. 3195
 
 ,
 
 41 L.Ed.2d 1153
 
 (1974). "[A] trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial."
 

 Id.
 

 "Where jury instructions are given without supporting evidence, a new trial is required."
 
 State v. Porter,
 

 340 N.C. 320
 
 , 331,
 
 457 S.E.2d 716
 
 , 721 (1995).
 

 A.
 
 Flight Instruction
 

 Defendant contends that the trial court erred in giving a flight instruction to the jury. We agree with defendant and find the flight instruction erroneous and prejudicial.
 

 "A trial court may properly instruct on flight where there is 'some evidence in the record reasonably supporting the theory that the defendant fled after the commission of
 
 *496
 
 the crime charged.' "
 
 State v. Lloyd,
 

 354 N.C. 76
 
 , 119,
 
 552 S.E.2d 596
 
 , 625 (2001) (quoting
 
 State v. Allen,
 

 346 N.C. 731
 
 , 741,
 
 488 S.E.2d 188
 
 , 193 (1997) ) (internal quotation marks omitted);
 
 see also
 

 State v. Irick,
 

 291 N.C. 480
 
 , 494,
 
 231 S.E.2d 833
 
 , 842 (1977). However, the evidence must show that the defendant took steps to avoid apprehension.
 
 State v. Thompson,
 

 328 N.C. 477
 
 , 490,
 
 402 S.E.2d 386
 
 , 392 (1991). Importantly, "[e]vidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it was so ... should not be left to the jury."
 
 State v. Lee,
 

 287 N.C. 536
 
 , 540,
 
 215 S.E.2d 146
 
 , 149 (1975) (quoting
 
 State v. Vinson,
 

 63 N.C. 335
 
 , 338 (1869) ) (deciding that a poorly conducted search for defendant resulted in mere speculation of flight and did not warrant a flight instruction at trial);
 
 see also
 

 State v. Duncan,
 

 264 N.C. 123
 
 , 127,
 
 141 S.E.2d 23
 
 , 27 (1965) ("[I]t is an established rule of trial procedure ... that an abstract
 
 *398
 
 proposition of law not pointing to the facts of the case at hand and not pertinent thereto should not be given to the jury.").
 

 In the present case, there exists no evidence upon which a reasonable theory of flight could be based. Shortly after 10:00 p.m. on the night of 1 April 2014, Reynolds briefly spoke with defendant and asked if he would voluntarily meet Reynolds at the Sheriff's Office to discuss the infant's injuries. Defendant initially agreed, but later chose not to meet Reynolds. Defendant, who remained in Catawba County throughout the time leading up to his arrest, was not required to meet Reynolds and was entirely within his rights to decline the offer at any time.
 

 Additionally, nothing in the record shows Reynolds or the Catawba County Sheriff's Office engaged in any search for defendant between 1 April and 11 April, when defendant was arrested. There is no indication in the record of any inquiries made regarding defendant's whereabouts, and the State did not obtain an arrest warrant for defendant on intentional child abuse until 17 April 2014, six days after defendant was arrested. Based on these facts, no evidence exists in the record that could "reasonably support[ ] the theory that the defendant fled after the commission of the crime charged."
 
 State v. Allen,
 

 346 N.C. 731
 
 , 741,
 
 488 S.E.2d 188
 
 , 193 (1997) (internal citation omitted). What the trial court deemed a "close call" in terms of defendant's alleged flight amounted to mere conjecture. Therefore, the instruction on flight was erroneous.
 

 The State improperly relies on
 
 State v. Abraham,
 

 338 N.C. 315
 
 ,
 
 451 S.E.2d 131
 
 (1994), in contending that a failure to communicate with law enforcement is sufficient for an instruction on flight. In
 
 Abraham,
 
 a patrol officer heard gunshots near his location, observed the defendant moving away from the murder scene shortly after the fatal shooting occurred, and approached the defendant, who then took a detour away from the officer.
 
 338 N.C. at 362
 
 ,
 
 451 S.E.2d at 156
 
 . Upon confronting the defendant, the officer asked about the shooting, and the defendant denied hearing any gunshots while continuing to walk away.
 

 Id.
 

 The defendant was discovered three weeks later at an apartment complex hiding in a closet under a pile of clothes and was arrested.
 
 Id.
 
 at 362,
 
 451 S.E.2d at 156-57
 
 . The evidence in
 
 Abraham
 
 was fully present in the record and taken together to support a flight instruction. In this case, the State failed to enter into evidence any fact reasonably supporting a theory of flight, but instead relied on defendant's decision not to speak with Reynolds on the night of 1 April as exemplary of flight. However, simply refusing to speak with law enforcement on a voluntary, pre-arrest basis cannot be used as evidence supporting defendant's guilt.
 
 State v. Mendoza,
 

 206 N.C.App. 391
 
 , 397,
 
 698 S.E.2d 170
 
 , 175 (2010). Moreover,
 
 *399
 
 defendant spoke with Reynolds on the night of 1 April, and no evidence in the record details any other attempt by the State to obtain information from defendant prior to his arrest. Reynolds had every opportunity to continue his conversation with defendant where they originally met on 1 April. In fact, Reynolds testified that
 
 he
 
 concluded the conversation with defendant and then asked defendant to voluntarily meet at the Sheriff's Office to further discuss the infant's injuries. Hence, the State's reliance on
 
 Abraham
 
 is unfounded.
 
 *497
 
 The State also argues that defendant deviated from his normal pattern of behavior and cites that deviation to indicate defendant's avoidance of apprehension. However, the record is less than sparse with facts supporting the State's contention. Reynolds testified that officers arrested defendant and Hoard at a hotel in Catawba County, the same county in which they were residing, on 11 April. Defendant confirmed this in his interview after waiving his
 
 Miranda
 
 rights and voluntarily speaking with Reynolds after his arrest. The State, however, put forward no further evidence relating to the length of the hotel reservation, and the lack of such evidence from 1 April until defendant presumably arrived at the hotel with Hoard on the day of his arrest does not support an inference of flight. Thus, defendant's case is distinguishable from
 
 State v. Hope,
 

 189 N.C.App. 309
 
 ,
 
 657 S.E.2d 909
 
 (2008), which the State uses to strengthen its argument in this instance. In
 
 Hope,
 
 trial testimony established that the defendant hurriedly left the murder scene, had a taxi drive him to Durham from a Raleigh hotel less than an hour later, and was found and arrested in a city ninety miles from Raleigh thirty-four days later.
 
 Id.
 
 at 319-20,
 
 657 S.E.2d at 915
 
 . Clearly the facts in
 
 Hope
 
 could be, and were, used to support a theory of flight. Contrarily, the record in this case leads only to weak "conjecture, speculation and surmise" regarding defendant's flight and "should not [have been] left to the jury."
 
 Lee,
 

 287 N.C. at 539-40
 
 ,
 
 215 S.E.2d at 149
 
 (internal quotation marks omitted).
 

 If a trial court erroneously proffers a flight instruction to the jury, the instruction must also sufficiently prejudice the defendant before a new trial can be granted on appeal.
 
 State v. Weaver,
 

 123 N.C.App. 276
 
 , 286,
 
 473 S.E.2d 362
 
 , 368 (1996). To demonstrate prejudice, a defendant must show that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen.Stat. § 15A-1443(a) (2015). Furthermore, when an erroneous and prejudicial instruction allows a jury to reach a verdict upon a state of facts not supported by the evidence contained in the record, a defendant is entitled to a new trial.
 
 Lee,
 

 287 N.C. at 541
 
 ,
 
 215 S.E.2d at 149
 
 .
 

 *400
 
 In this case, there exists a reasonable possibility that the flight instruction caused the jury to reach a felony conviction. Thus, the erroneous instruction was prejudicial. In order to obtain a conviction for intentional child abuse, the State must prove-and the jury must find-an intentional assault on the child. During its deliberation, the jury members asked for a definition of "intentional," to which the court responded with no explanation apart from its original instruction. This decision certainly left the jury's confusion unassuaged and conceivably vulnerable to the inclusion of the ill-fated flight instruction. Permitting the jury to consider defendant's flight "together with all other facts and circumstances ... to ... show ... a consciousness of guilt" created a reasonable possibility that the jury deemed "consciousness of guilt" synonymous with "intentional," thereby allowing it to insert the former as proof of the latter. Because intentional assault is required for a felony child abuse conviction, it is reasonably possible that the jury returned a felony conviction based on the erroneous instruction. Thus, had the jury
 
 not
 
 received the instruction on flight, it is reasonably possible that it would have reached an alternative verdict.
 

 B.
 
 Assault Instruction
 

 Although a new trial is warranted due to the erroneous flight instruction, we briefly address defendant's argument on the assault instruction.
 

 Defendant contends that the trial court erred in its use of the term "handling" to describe for the jury the element of intentional assault, which was required for his felony conviction. We do not agree. We have reviewed the trial court's instructions regarding assault and find that the court fairly and adequately explained the law in its relation to intentional assault. We further note that defendant failed to object to the proffered language, and in fact characterized the trial court's language of "handling" in describing the assault as "the most reasonable [proposal defendant has] heard."
 

 *498
 
 When a defendant fails to object to a jury instruction at trial, that instruction is subject to plain error review. N.C. R.App. P. 10(a)(4) (2015);
 
 see also
 

 State v. Goforth,
 

 170 N.C.App. 584
 
 , 587,
 
 614 S.E.2d 313
 
 , 315 (2005).
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is
 
 *401
 
 to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.
 

 State v. Lawrence,
 

 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (internal quotation marks and citations omitted). Notably, "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court."
 
 Henderson v. Kibbe,
 

 431 U.S. 145
 
 , 154,
 
 97 S.Ct. 1730
 
 , 1736,
 
 52 L.Ed.2d 203
 
 , 212 (1977).
 

 Trial courts are given discretion regarding choice of jury instructions.
 
 State v. Nicholson,
 

 355 N.C. 1
 
 , 66,
 
 558 S.E.2d 109
 
 , 152 (2002). After proffering general instructions pertaining to the charges against a defendant, a trial court may choose to supplement those instructions with additional, explanatory instructions.
 
 State v. Bartlett,
 

 153 N.C.App. 680
 
 , 685,
 
 571 S.E.2d 28
 
 , 31 (2002) (stating that those explanatory instructions "will not be overturned absent abuse of [the trial court's] discretion");
 
 see also
 

 State v. Prevette,
 

 317 N.C. 148
 
 , 164,
 
 345 S.E.2d 159
 
 , 169 (1986) ("[T]he trial court is in the best position to determine whether further additional instruction will aid or confuse the jury in its deliberations[.]").
 

 Defendant relies on
 
 State v. Lineberger,
 

 115 N.C.App. 687
 
 ,
 
 446 S.E.2d 375
 
 (1994), to support his contention that the trial court erred in defining assault using the term "handling." In
 
 Lineberger,
 
 the defendant was convicted for assaulting a police officer.
 
 115 N.C.App. at 687
 
 ,
 
 446 S.E.2d at 376
 
 . At the close of evidence, the trial court gave the following assault instruction: "that the defendant assaulted [the officer] by intentionally and without justification or excuse,
 
 striking or bumping
 
 against him with his shoulder."
 
 Id.
 
 at 689,
 
 446 S.E.2d at 377
 
 (emphasis added). Before reaching a verdict, the jury asked the trial court for a definition of assault, but was instead given an instruction identical to the original instruction.
 
 Id.
 
 at 690,
 
 446 S.E.2d at 377-78
 
 . Because the jury required a definition of assault in order to reach a verdict, "the omission of the definition of assault was prejudicial error" resulting in a new trial for the defendant.
 
 Id.
 
 at 692,
 
 446 S.E.2d at 379
 
 .
 

 The case at bar is distinguishable. First, the jury in this case did not inquire as to the definition of assault and, therefore, did not need a definition in order to return a verdict upon completion of deliberations. Second, the court's instruction was sufficient to "otherwise explain" the term of assault as it relates to this case. To "otherwise explain" the meaning of assault, the trial court may describe the victim's injuries and their genesis if the description leaves the jury with enough information so that it has no question regarding the meaning of assault.
 

 *402
 

 State v. Springs,
 

 33 N.C.App. 61
 
 , 64,
 
 234 S.E.2d 193
 
 , 195 (1977) (deciding that the trial court did not err in defining assault as "shooting [the victim] in the ... chest with a shotgun"). Here, after receiving the assault instruction in which the court said, "the State would have to prove beyond a reasonable doubt that the defendant assaulted the victim by handling the alleged victim in such a manner as to cause or result in the various injuries, including broken bones," the jury did not ask the court for further information or instruction regarding the force element of assault. Therefore, the court "otherwise explain[ed]" this particular element and committed no error in instructing on assault using the term "handling."
 

 Moreover, the trial court's decision to instruct using "handling" to characterize assault was appropriate as it adequately explained the law as it applied to the evidence. "The primary purpose of a jury charge is to
 
 *499
 
 inform the jury of the law as it applies to the evidence 'in such manner as to assist the jury in understanding the case and in reaching a correct verdict.' "
 
 State v. Holmes,
 

 120 N.C.App. 54
 
 , 71,
 
 460 S.E.2d 915
 
 , 925 (1995) (quoting
 
 State v. Williams,
 

 280 N.C. 132
 
 , 136,
 
 184 S.E.2d 875
 
 , 877 (1971) ). "[T]he manner in which it chooses to do so is within its discretion."
 

 Id.
 

 To avoid potential jury confusion regarding the general assault element of consent-since a three-month-old infant is incapable of withholding consent-the trial court chose to forego the general instruction and, instead, provided the pattern jury instruction for simple assault after instructing the jury on both intentional child abuse and the lesser-included offense of misdemeanor child abuse. The trial court was well within its discretion to do so.
 
 State v. Daniels,
 

 38 N.C.App. 382
 
 , 384,
 
 247 S.E.2d 770
 
 , 772 (1978) (defining assault as defendant "[striking victim] over the head with a blackjack" was "sufficient to define and explain the law arising on the evidence");
 
 see also
 

 State v. Hewitt,
 

 34 N.C.App. 152
 
 , 153,
 
 237 S.E.2d 338
 
 , 339 (1977) (emphasis in original) (instructing the jury that assault occurred "by intentionally shooting [the victim] with a pistol ... explained the term assault and applied the law to the evidence"). Therefore, the trial court's use of "handling" in its description of assault was not error, much less plain error.
 

 III.
 
 Conclusion
 

 For the reasons stated, we hold that the trial court erred in offering a flight instruction to the jury, but did not commit plain error in instructing the jury on assault. Defendant is awarded a new trial.
 

 NEW TRIAL.
 

 Judges STEPHENS and ZACHARY concur.