## STATE v. DANIEL KEATH.

*Evidence—Practice—Judge's Charge—Drunkenness.*

1. The weight of evidence is always a question for the jury.

2. A prisoner offered to prove a conversation between a witness and another person, and the same was rejected; *Held* that an exception thereto cannot be sustained in this court, where the evidence proposed and rejected is not set out in the record.

3. In a conflict of memory between a judge and counsel as to what a witness had testified, the jury were told that the court might be mistaken in the notes of the testimony and they could use them to refresh their memory, but it was from the mouth of the witness they were to get the testimony upon which to found their verdict; *Held*, no error.

4. Voluntary drunkenness is never an excuse for the commission of a crime.

5. This court will not pass upon an exception which is not shown by the record to have been taken on the trial.

(*State* v. *Worthington*, 64 N. C., 594; *State* v. *Jones*, 69 N. C., 16; *State* v. *Ballard*, 79 N. C., 627; *State* v. *Crockett*, 82 N. C., 599; *State* v. *Hinson*, *Ib.*, 597, cited and approved.)

INDICTMENT for Murder removed from Cleaveland and

tried at Spring Term, 1880, of RUTHERFORD Superior Court, before *McKoy, J.*

Verdict of guilty, judgment, appeal by the prisoner.

*Attorney General,* for the State.
*Messrs. Merrimon & Fuller,* for prisoner.

ASHE, J. On the 28th day of January, 1880, one Alice Ellis, a child, was found dead in an old field in the county of Cleaveland, in the vicinity of the residence of the prisoner. Her head was crushed as with a stone, and her body bore the marks of violent sexual connection. Suspicion fastened upon the prisoner. He was arrested, tried and convicted by a jury at spring term, 1880, of Rutherford superior court.

After the jury returned their verdict, there was a rule for a new trial. The rule was discharged and sentence pronounced against the prisoner, from which he appealed to this court.

There was no exception to the charge of His Honor, but the application of the rule was based upon exceptions which are as follows:

1. That the jury found against the weight of evidence.

2. Because the prisoner offered to prove by one J. Hicks, a witness for the defence, a conversation between the said Hicks and one Bridges on the 28th of January, 1880, at "Burnt Chimney," about eighteen miles from the place of the homicide, with regard to the person described in the testimony of Hicks given on the trial. The state objected and the conversation was ruled out. To which the prisoner excepted.

3. Because, in the notes of the evidence taken by the court, the testimony of Thornton Ellis was read over to the jury, which showed that the tracks were twisting, and the prisoner's counsel contended that the evidence of Thornton

Ellis was that the boots were twisting. The court told the jury "that in the notes of the testimony the court might have been mistaken, and would therefore ask the jury to take the notes only for the purpose of carrying them back to what the witness did say, as it was from the mouth of the witness they would get testimony upon which they were to found their verdict, using the notes of the court only for the purpose of refreshing their memories as to what the witness did say."

4. The prisoner's counsel asked the court to charge the jury, that if the crime with which the prisoner is charged was actually committed by him, while under the influence of whisky or by sudden provocation, as some of the evidence tends to show, and while other evidence tends to show that the prisoner and the deceased were perfectly friendly, and were but a short time before such occurrence on good terms, then it was manslaughter, and not murder. This instruction the court declined to give, as the evidence did not justify the charge, and the prisoner excepted. His Honor overruled all the exceptions and discharged the rule.

The only question presented for our consideration is, was there error in the ruling of His Honor upon the exceptions or in his ruling in refusing to give the instructions prayed for. We hold there was none. The weight of evidence is always a question for the jury. So well settled is this principle that we deem it unnecessary to cite any authority in support of the ruling of the judge below.

The second exception, to the rejection by the court of a conversation between the witness and one Bridges, cannot be sustained in this court, because the evidence proposed and rejected is not set out. "The omission to do so excludes the point. For unless the matter which the party offers to prove is set out, the error in rejecting it does not appear on the record," and the court is unable to see whether the evidence is relevant or not. *State v. Worthington*, 64 N. C., 594.

We are unable to see any error in his ruling on the third exception. In a conflict of memory between the court and the counsel for the prisoner as to what a witness had testified, the court might very properly have insisted upon its notes as the correct statement of the testimony of the witness; but in this case His Honor candidly told the jury that the court might be mistaken in the notes of the testimony, and they might use the notes for the purpose of refreshing their memory as to what he did say, but it was from the mouth of the witness they were to get the testimony upon which to found their verdict. It was fairly, we think, submitting the question of fact to the recollection of the jury.

After these exceptions had been overruled, the prisoner's counsel asked the judge to charge the jury that if prisoner committed the crime while under the influence of whisky or upon sudden provocation, it was but manslaughter. His Honor very properly refused to give this instruction, for there was no evidence in the case that justified such a charge. And even if there had been evidence that the prisoner was intoxicated, it is well settled that voluntary drunkenness is never an excuse for the commission of crime. 1 Wharton's Cr. L., § § 33, 41; Hawkins P. C., 356; Bishop Cr. L., § § 488, 489. And as to the point of provocation there is not the shadow of proof. We cannot conceive how it is possible a child whose person had been violated and who had then been murdered, evidently to suppress the evidence of the crime, could have given any provocation. The idea is preposterous.

The main stress of the argument of the prisoner's counsel, before this court, was upon the point that the evidence in the case was not sufficient to warrant the jury in finding a verdict of guilty, and that it was error in the judge below in not so instructing the jury. But that exception was not taken in the superior court, and it has been held in this court that a point which the bill of exceptions or the case

stated shows was not taken in the court below, and which does not appear upon the record, cannot be taken in the supreme court. *State* v. *Jones*, 69 N. C., 16; *State* v. *Ballard*, 79 N. C., 627; *State* v. *Crockett*, 82 N. C., 599; *State* v. *Hinson*, 82 N. C., 597. But as this is a question of human life we have carefully perused all the evidence in the case, and in our opinion it discloses such a series of circumstances which when grouped together point so convincingly to the prisoner as the perpetrator of the crime with which he is charged, that the jury were not only well warranted in finding the verdict of guilty, but that to have done otherwise would have been a flagrant violation of duty. The prisoner, by their verdict, has been justly doomed to the expiation of a crime characterized by the most brutal cruelty.

There is no error. Let this be certified to the superior court of Rutherford county, that the sentence of the law may be carried into execution.

PER CURIAM.                                             No error.