STATE OF NORTH CAROLINA v. BRYANT LAMONT BOYD

No. COA10-1072

(Filed 2 August 2011)

## 1. Kidnapping—second-degree—erroneous instruction—no evidence of removal

The trial court erred by including removal in its jury instruction for second-degree kidnapping. No evidence was presented at trial indicating defendant removed the victim from her living room. The State failed to meet its burden of demonstrating beyond a reasonable doubt that defendant's constitutional right to a unanimous jury verdict was not violated, and thus, defendant was entitled to a new trial on the kidnapping charges. Further, defendant's habitual felon conviction was vacated because it was formed partially based on the kidnapping conviction.

## 2. Sexual Offenses—sexual battery—instruction

The trial court did not err by allegedly instructing the jury on a theory of sexual battery not supported by the evidence. Defendant's argument went to the weight of the evidence and not its existence.

## 3. Burglary and Unlawful Breaking or Entering—first-degree burglary—failure to include "not guilty" final mandate

The trial court did not err by failing to include a "not guilty" final mandate in the jury's instruction on first-degree burglary. The jury was instructed explicitly that it could not return a guilty verdict should it have reasonable doubt as to any of the elements of first-degree burglary.

## 4. Criminal Law—prosecutor's argument—breaking into house

The trial court did not abuse its discretion by overruling defendant's objection and by failing to intervene *ex mero motu* in a portion of the State's closing argument regarding an assailant's entry into the victim's house for first-degree burglary. Counsel is typically given wide latitude in closing arguments.

## 5. Appeal and Error—appealability—mootness—shackles—conviction vacated

Although defendant contended that he was denied a fair trial by virtue of his visible shackling during the habitual felon phase

of a trial, this argument was not addressed because defendant's habitual felon conviction was vacated.

Appeal by Defendant from judgment entered 14 April 2010 by Judge Abraham P. Jones in Orange County Superior Court. Heard in the Court of Appeals 10 March 2011.

*Attorney General Roy Cooper, by Assistant Attorney General David L. Elliott and Agency Legal Specialist Brian C. Tarr, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Andrew DeSimone, for Defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Bryant Lamont Boyd ("Defendant") appeals from his convictions for first degree burglary, second degree kidnapping, sexual battery, and attaining habitual felon status. Defendant alleges the trial court erred by (1) instructing the jury on a theory of second degree kidnapping that was not charged in the indictment or supported by evidence; (2) instructing the jury on a theory of sexual battery Defendant claims was unsupported by evidence; (3) deviating from the pattern jury instructions on the first degree burglary charge; (4) overruling Defendant's objection to, and failing to intervene *ex mero motu* during, the State's closing argument; (5) allowing Defendant to be shackled in view of the jury during the habitual felon stage of the trial; and (6) permitting the introduction of evidence in the habitual felon phase Defendant claims was irrelevant and impermissibly prejudicial. For the reasons set forth below, we find no error in issues two through four. We find error with the trial court's jury instructions on kidnapping and order Defendant's conviction vacated and remand for a new trial. As this kidnapping conviction was one of the predicate felonies at issue in Defendant's habitual felon conviction, we must vacate and remand that judgment as well. As a result, we do not reach the last two issues raised by Defendant on appeal.

## I. Factual & Procedural History

The State's evidence tended to show the following. Pinky Shah moved to the United States from India in February 2008. In 2009, she and her husband moved into the Colony Apartments in Chapel Hill. On an April evening, Shah returned home after leaving work and went to bed. Shah did not testify as to whether she closed or locked the door, but she did tell police that she believed she locked the door.

According to her trial testimony, Shah was awoken around 3:00 a.m. by the noise of someone entering her apartment. She initially assumed it was her husband, whom she expected home late from work. After lying in bed for a period of about ten to fifteen minutes, she got up and walked towards the living room from the bedroom. Her bedroom opened directly into the living room; there was no hallway. Instead of finding her husband, she saw Defendant sitting on the couch. Shah had seen Defendant prior to that night on a few occasions, usually hanging around with some other men in front of a nearby apartment. She testified her husband would sometimes say hello and make small talk with these men.

Before she could say anything, Defendant rushed toward Shah, who was standing just outside the entrance to the doorway of her bedroom, and said, "Don't make a noise. I'm not here to hurt you." Defendant repeatedly asked Shah if they could talk in the bedroom, but she insisted they stay put. Defendant then said, "All right, we will talk [in the living room]." Defendant told Shah she would have to sit on his lap. Shah attempted to move towards the front door to leave, but Defendant blocked her movements and pushed her back. Defendant asserted, "No. Now that I'm here, I'm going to get something out of you."

Shah walked about ten feet from the area in front of the bedroom doorway to a chair in the living room. Defendant "made" her sit on his lap, according to Shah's testimony (it is unclear how Defendant forced her to cross the room before she sat on his lap). Defendant said, "I'm going [to] sit here and you [sic] going to sit on my lap and you going to give me a hand job." At some point Defendant stated, "If you don't want me to rape you, you will do this." Defendant unzipped his pants, grabbed Shah's hand, and forced her to touch his penis. Shah rubbed Defendant's penis for a long period of time while he attempted to grope her; eventually, he ejaculated on her hands and shirt. Shah testified that, at some point, Defendant must have been successful in his attempts to grope her. After this occurred, Defendant kept Shah pinned on his lap. Defendant made Shah write her phone number on a scrap of paper torn from an envelope, stating, "I hope it's the right number because I'm going to call you later today."

Defendant then left through the front door. As he was leaving, Defendant re-affixed the screen of the kitchen window, saying, "I'm going to put this screen back on for you and make sure no one else breaks into your apartment."

After Defendant left, Shah called her husband and her mother-in-law. Her mother-in-law advised her to call the police, but Shah did not call emergency services at that time. When Shah's husband returned to the apartment, he dialed 911, but Shah hung up on the dispatcher. The dispatcher called back, and Shah gave a statement of the event to police.

Chapel Hill Police arrived at the Shah residence later that morning to investigate. Shah told police about the incident and gave a description of the assailant. After obtaining this information, they developed Defendant as a suspect.

Officer David Britt of the Chapel Hill Police Department went to Defendant's apartment, which was in the same complex as Shah's. The door was answered by Regina Baldwin, Defendant's sister. As Officer Britt looked inside the apartment, he saw a pile of clothes that matched Shah's description of the clothes worn by the intruder. Defendant claimed the clothes as his, and permitted Officer Britt to take a picture of the garments. Officer Britt then left Defendant's apartment, and showed Shah the picture he had just taken. Shah stated the clothes could have been the ones she saw on the assailant, although she admitted it was dark during the incident.

When Officer Britt returned to Defendant's apartment, he overheard Baldwin telling Defendant "that a woman had been sexually assaulted in addition to the break-in." Defendant replied, "Yeah, I know." Baldwin asked Defendant how he knew, and Defendant indicated that he had heard Officer Britt tell Baldwin this fact. Officer Britt told Defendant that he had never said anything of that sort to Baldwin and asked Defendant how he knew of the sexual assault. Defendant walked over to a couch, sat down, looked at the floor and replied, "Nevermind. Just forget it."

Officer Britt asked for permission to search the home from Baldwin, who declined to consent. Another officer had everyone inside come out of the apartment in order to "freeze" the scene before applying for a search warrant. Defendant attempted to bring a coat with him that was on the floor. After being told to leave the coat, Defendant asked to pull a lighter out from the pocket. Instead of a lighter, an officer saw Defendant remove a scrap of paper from the pocket, which contained Shah's phone number. Finding this to be consistent with Shah's description of the events, the officers placed Defendant under arrest.

Defendant subsequently waived his *Miranda* rights and gave a statement in which he claimed to have called Shah earlier on 18

April—arguing the encounter was consensual. Police later found no record of any phone calls received by Shah of the time or length described by Defendant. Subsequently, police found in Shah's home the remainder of the envelope from which the paper containing her phone number was torn. Defendant did not put on any evidence. Defendant's counsel in closing argument acknowledged that Defendant had been untruthful with police, but maintained that the encounter on the night in question was consensual.

Defendant was convicted of first degree burglary, second degree kidnapping, and misdemeanor sexual battery. Defendant was later found to have attained habitual felon status and was sentenced to 121 to 155 months imprisonment. Defendant gave timely notice of appeal.

## II. Jurisdiction

We have jurisdiction over Defendant's appeal of right. *See* N.C. Gen. Stat. § 15A-1444(a) (2009) ("A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered."); N.C. Gen. Stat. § 7A-27(b) (2009) (stating appeal shall be to this Court).

## III. Analysis

Defendant raises several issues on appeal, which we address in turn.

### A. Jury Instruction—Second Degree Kidnapping

[1] Defendant first argues the trial court erroneously instructed the jury with respect to the second degree kidnapping charge.[1] Specifically, Defendant contends the trial court erred by instructing the jury on a theory of second degree kidnapping that was (1) unsupported by the evidence presented at trial and (2) not charged in the indictment. We agree.

We turn first to Defendant's claim that the trial court erred by instructing on a theory of kidnapping that was not supported by the evidence presented at trial. At the conclusion of Defendant's trial, the jury was instructed it could convict Defendant if it found, beyond a reasonable doubt, that he "confined or restrained or removed a per-

---

1. The State incorrectly contends this issue is not properly before this Court because it was not set forth in Defendant's proposed issues on appeal. *See* N.C. R. App. P. 10(b) ("Proposed issues on appeal are to facilitate the preparation of the record on appeal and shall not limit the scope of the issues presented on appeal in an appellant's brief.").

son from one place to another." Defendant asserts that, as a result of this instruction, he was denied his state constitutional right to a unanimous jury verdict.

As a question of law, this Court reviews the sufficiency of jury instructions *de novo. State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). Under *de novo* review, this Court "considers the matter anew and freely substitutes its own judgment for that of" the trial court. *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (internal quotation marks omitted) (citation omitted).

The Constitution of North Carolina provides that "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N.C. Const. art. 1, § 24; *see also* N.C. Gen. Stat. § 15A-1237(b) (2009) (reiterating and codifying this right). Consequently, "jurors must unanimously agree that the State has proven beyond a reasonable doubt each and every essential element of the *crime charged." State v. Jordan*, 305 N.C. 274, 279, 287 S.E.2d 827, 831 (1982) (emphasis added). When a trial court "erroneously submits the case to the jury on alternative theories, one of which is not supported by the evidence," and "it cannot be discerned from the record upon which theory or theories the jury relied [on] in arriving at its verdict, the error entitles [the] defendant to a new trial." *State v. Lynch*, 327 N.C. 210, 219, 393 S.E.2d 811, 816 (1990).

No evidence was presented at trial indicating Defendant removed Shah from her living room.[2] According to Shah's testimony, Defendant initially insisted on moving to Shah's bedroom, but eventually agreed to stay in the living room.

The State argues that there was evidence of removal presented at Defendant's trial. In support of this assertion, the State points to two portions of Shah's testimony in which she describes Defendant forcing her to sit on his lap in a nearby chair. The State argues this constitutes sufficient evidence of removal, and therefore Defendant's argument is factually deficient. We find the State's argument unpersuasive. It is unclear how Defendant "forced" Shah to accompany him to the chair. And even assuming there is sufficient evidence of actual or constructive force, we conclude the asportation in this case was insufficient to constitute removal.

---

2. Defendant was not indicted for the "removal" element of kidnapping. "It is a well-established rule in [North Carolina] that it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the bill of indictment." *State v. Tucker*, 317 N.C. 532, 537–38, 346 S.E.2d 417, 420 (1986). However, we need not reach the question of whether this necessitates a new trial.

We acknowledge that there is no particular requirement that a defendant move a victim a certain distance in order to support a charge of kidnapping under a theory of removal, and our Supreme Court has specifically rejected the notion that removal must be "substantial." *See State v. Fulcher*, 294 N.C. 503, 522–23, 243 S.E.2d 338, 351 (1978) ("[I]t was clearly the intent of the Legislature to make resort to a tape measure . . . unnecessary in determining whether the crime of kidnapping has been committed."). Therefore, the State is correct in citing *State v. Owen*, 24 N.C. App. 598, 211 S.E.2d 830 (1975), for the proposition that moving a victim a short distance *could* constitute kidnapping in a proper case. This, however, is not such a case.

We do not discount the notion that evidence of removal could be present in a case where a victim was moved a distance equivalent to the space between where Shah was standing and the chair. However, we cannot conclude that the evidence presented at trial, or any fair inference stemming therefrom, suggests Shah was "removed" in this case. According to her own testimony, the entirety of Shah's encounter with Defendant occurred within the confines of her living room, and certainly evidence was presented as to Defendant confining and restraining her. Defendant attempted to talk Shah into accompanying him to the bedroom, but she refused. Interpreting Shah's testimony as supporting the assertion Defendant "removed" her is not plausible.

This conclusion is consistent with this Court's recent decisions in the home invasion context. We have recently held that a kidnapping victim may be "removed" from one area of their home to another. *See, e.g., State v. Mangum*, 158 N.C. App. 187, 195, 580 S.E.2d 750, 755 (2003) (evidence tending to show a rape victim was forced down a hallway from one room to another was sufficient asportation to support a conviction for second-degree kidnapping); *State v. Blizzard*, 169 N.C. App. 285, 291, 610 S.E.2d 245, 250 (2005) ("[D]efendant's forcible movement of the victim from the front of her home to the bedroom was a sufficient asportation to support kidnapping . . . ."). But these cases are distinguishable from the matter at bar. Both *Mangum* and *Blizzard* involved a victim being "removed" from one section of their home to another. Here, however, Shah testified Defendant made her sit on his lap in a chair in the same room, merely a few feet from where she was standing. We hold that, under these facts, where the victim was moved a short distance of several feet, and was not transported from one room to another, the victim was not "removed" within the meaning of our kidnapping statute.

In the absence of any evidence of removal, the presence of the instruction regarding removal provided the jury an illegitimate mode of conviction. Since we cannot discern from the record whether all twelve jurors convicted Defendant on the instructed theories that were supported by evidence ("confinement or restraint"), we hold Defendant's right to a unanimous jury verdict was violated by virtue of the inclusion of the "removal" instruction.[3]

The State argues that, in light of Defendant's failure to object to the instruction at trial, Defendant is limited to plain error review. However, our courts have carved out an exception to the general rule that, "when a defendant fails to object to errors committed by the trial court during the trial, [the defendant] is precluded from raising the issue on appeal." *State v. Davis*, 188 N.C. App. 735, 739, 656 S.E.2d 632, 635 (2008). "A defendant's failure to object at trial to a possible violation of his right to a unanimous jury verdict does not waive his right to appeal on the issue, and it may be raised for the first time on appeal." *State v. Mueller*, 184 N.C. App. 553, 575, 647 S.E.2d 440, 456 (2007); *accord State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985) (stating that, despite the "general rule" that a "defendant's failure to object to alleged errors by the trial court operates to preclude raising the error on appeal," where the alleged "error violates defendant's right to a trial by a jury of twelve, defendant's failure to object is not fatal to his right to raise the question on appeal"). Therefore, Defendant's failure to object to the instruction at trial does not preclude this Court from reviewing the issue unbound by the constraints of plain error analysis. *See Davis*, 188 N.C. App. at 739, 656 S.E.2d at 635 (reviewing "defendant's unanimity argument despite the lack of any objection at trial").

Having determined this issue preserved, we must still consider whether Defendant is entitled to a new trial as a result of this error. Where an error implicates a defendant's right to a unanimous jury verdict under our Constitution, the State bears the burden of demonstrating beyond a reasonable doubt that the error was harmless. *State v. Nelson*, 341 N.C. 695, 700-01, 462 S.E.2d 225, 227-28 (1995). This is a heavy burden. "An error is harmless beyond a reasonable doubt if it

---

3. We note that the North Carolina Pattern Jury Instructions on second degree kidnapping contain brackets around each of these three theories. See N.C.P.I.-Crim. 210.30. These brackets are to indicate "[a]lternative words or phrases" and "only the appropriate word is to be used." *See* Committee on Pattern Jury Instructions, North Carolina Conference of Superior Court Judges & Institute of Government, University of North Carolina at Chapel Hill, Guide to the Use of This Book, in North Carolina Pattern Jury Instructions: Criminal Volume I, at xix (2010).

did not contribute to the defendant's conviction." *Id.* at 701, 462 S.E.2d at 228.

The State fails to make any argument on appeal that the presence of these instructions on "removal" was "harmless beyond a reasonable doubt." Consequently, the State has failed to meet its burden of persuasion. *See State v. Pinchback*, 140 N.C. App. 512, 520–21 & n.4, 537 S.E.2d 222, 227 & n.4 (2000) (holding that the State did not meet its burden of demonstrating that constitutional violation was harmless beyond a reasonable doubt where the State did not address the issue in its brief).

Accordingly, Defendant is entitled to a new trial on the kidnapping charges. Because this conviction formed part of the basis for Defendant's habitual felon conviction, we also vacate Defendant's habitual felon conviction. *See State v. Jones*, 157 N.C. App. 472, 479, 579 S.E.2d 408, 413 (2003) ("Since we hold that defendant is entitled to a new trial on the . . . charge[] which served as the 'substantive felony' underlying his conviction for having habitual felon status, defendant's habitual felon conviction must be vacated.").

## B. Jury Instruction—Sexual Battery

[2] Defendant next alleges the trial court similarly erred in instructing the jury on a theory of sexual battery not supported by the evidence presented at trial. We disagree.

At trial, the court instructed the jury it could convict Defendant of sexual battery if it found he touched "the sexual organ, breasts, groin [or] buttock[s], of any person" or if he touched another person with his own "sexual organ, breasts, groin, or buttocks." Defendant claims no evidence was presented at trial suggesting he touched Shah's "sexual organ, breasts, groin, or buttocks." Echoing his kidnapping argument, Defendant contends the jury was instructed on a theory of the case unsupported by evidence, and therefore he is entitled to a new trial on this charge. We disagree.

At trial, Shah testified that Defendant attempted to touch her "everywhere," and that although she could not remember, "[t]here were times when he must have been successful" in attempting to touch her breasts and groin. She also testified that Defendant forced her to touch his penis. There was evidence presented sufficient to instruct the jury on both theories. Defendant's argument, to the extent he has any, goes to the weight of the evidence presented to the jury, not its existence. It is well settled that "[t]he weight of evidence

is always a question for the jury." *State v. Keath*, 83 N.C. 626, 628, (1880). We find no error.

## C. Instruction—First Degree Burglary

**[3]** Defendant next alleges the trial court erred by "failing to include a not guilty final mandate" in the jury's instruction on first degree burglary, and as a result he is entitled to a new trial on that charge. We disagree.

During the charge conference, the trial court indicated without objection that it would instruct the jury on first degree burglary, with no lesser included offenses, in accordance with pattern jury instruction 214.10. *See* N.C.P.I.___ Crim. 214.10 (2008). However, the trial court did not utilize verbatim the language outlined in pattern instruction 214.10. Instead, the court appears to have instructed the jury using language that would have typically been followed by further instructions regarding lesser included offenses. However, no such lesser included instructions were given. Defendant argues this did not provide the jury with a "final not guilty mandate."

Defendant's trial counsel offered no objection with regard to this variance. Accordingly, the State argues this Court should adopt a plain error analysis in evaluating Defendant's claim. However, our Supreme Court has held that a defendant need not object to preserve the issue of a variance when the Defendant agreed to the use of a particular instruction. *See State v. Keel*, 333 N.C. 52, 56–57, 423 S.E.2d 458, 461 (1992) (holding that "[t]he State's request [to use the pattern instructions], approved by the defendant and agreed to by the trial court, satisfied the requirements . . . of the North Carolina Rules of Appellate Procedure and preserved this question for review on appeal" where the trial court varied from the agreed upon instructions). Once again, we review a trial court's decisions regarding jury instructions *de novo. Osorio*, 196 N.C. App. at 466, 675 S.E.2d at 149.

Instead of the final mandate provided by the pattern instructions, jurors heard the following:

Now if you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant broke into and entered an occupied dwelling house without the owner's or tenant's consent during the nighttime and that at that time intended to commit second degree kidnapping and/or second degree rape, it would be your duty to return a verdict of guilty of first degree burglary. If you do not so find or you have a reasonable doubt as

to one or more of these things, you will not return a verdict of guilty of first degree burglary."

Defendant argues he was prejudiced by the trial court's use of this instruction as opposed to the pattern instruction, which would have directed the jury "it would be your duty to return a verdict of not guilty" should they have reasonable doubt as to any element.

Defendant relies on *State v. McHone*, 174 N.C. App. 289, 620 S.E.2d 903 (2005), to support his assertion. In *McHone*, the trial court similarly failed to provide the jury with the preferred "not guilty" mandate in its instructions on first degree murder. *Id.* at 292-93, 620 S.E.2d at 906-07. During the jury charge, the court instructed the jury in a manner that seemed to infer their only choice was which theory (felony murder or malice) to choose in returning a guilty verdict. *Id.* at 297, 620 S.E.2d at 909 ("The instruction, then, in the absence of a final not guilty mandate, essentially pitted one theory of first degree murder against the other, and *impermissibly suggested* that the jury should find that the killing was perpetrated by defendant on the basis of at least one of the theories.") (emphasis in original). In addition, the verdict sheet provided to the jury did not contain a space or option for them to indicate a "not guilty" verdict. *Id.* at 298, 620 S.E.2d 909. This Court found plain error and vacated the defendant's sentence. *Id.* at 292, 620 S.E.2d at 906.

*McHone* is distinguishable from this case. Here, the jury was instructed explicitly that it could not return a guilty verdict should it have reasonable doubt as to any of the elements of first degree burglary. Unlike *McHone*, all of the verdict sheets given to the jury provided them the option of returning a not guilty verdict. The trial court polled the jury after having read the verdict and found the jury voted unanimously to convict on the burglary charge.

We acknowledge that "the preferred method of jury instruction is the use of the approved guidelines of the North Carolina Pattern Jury Instructions." *State v. Tyson*, 195 N.C. App. 327, 335, 672 S.E.2d 700, 706 (2009). However, "[i]t is well established that 'the trial court's charge to the jury must be construed contextually and isolated portions of it will not be held prejudicial error when the charge as a whole is correct.'" *State v. Hornsby*, 152 N.C. App. 358, 367, 567 S.E.2d 449, 456 (2002) (quoting *State v. Boykin*, 310 N.C. 118, 125, 310 S.E.2d 315, 319 (1984)). The jury here was given a clear instruction, and there is nothing in the record to suggest jurors were confused as to the conditions under which they could return an acquittal.

Variance from the pattern instructions notwithstanding, we conclude Defendant was not prejudiced by the instructions given to the jury. Accordingly, we find no error.

## D. The State's Closing Argument

[4] Defendant next alleges the trial court twice erred during the State's closing argument. First, Defendant argues the trial court abused its discretion in overruling his objection to a portion of the State's argument. Defendant also claims the court erred by not intervening *ex mero motu* during a subsequent portion of that same argument. We disagree.

Defendant objected to the following portions of the State's closing argument:

> So let's go back to first degree burglary. The first element was breaking and an entry by the defendant. We know he was there because he was in the apartment. Was there a break-in? Yes, he got into that front door. She left it open. She made a mistake that night.
>
> . . . .
>
> She said on her—in her testimony—maybe I forgot to leave the front door open [sic].

Defendant argues now, as he did then, that the evidence presented did not support either of these statements.

We review a trial court's decision to overrule an objection made during closing argument for an abuse of discretion. *State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002). In determining whether an abuse of discretion has occurred, we look first to whether the statements were improper, and then determine if they were "of such a magnitude that their inclusion prejudiced [the] defendant, and thus should have been excluded by the trial court." *Id.* We note that typically counsel is given wide latitude in closing argument, provided "the liberty of argument [does not] degenerate into license." *State v. Miller*, 271 N.C. 646, 659, 157 S.E.2d 335, 345 (1967). As a general proposition, "[a]rguments to a jury should be fair and based on the evidence or on that which may be properly inferred from the case." *Id.*

Upon review of the record, we cannot conclude the statements at issue were necessarily improper, let alone prejudicial. Admittedly, no one testified as to how the assailant that night entered the Shah residence. Frankly, no individual who testified could have had the knowl-

edge. However, Officer Britt testified Shah reported she had initially been awoken by what she thought was the sound of the front door opening, and Shah reiterated this fact in her own testimony. Therefore, one could infer that Defendant entered Shah's apartment through an unlocked front door, even in spite of the evidence presented of forced entry through the window. Without any explicit evidence of the method of entry, it was the State's prerogative to argue one theory over another, or both. Therefore, we conclude the trial court did not abuse its discretion in overruling Defendant's objection.

Defendant also claims the trial court erred by not intervening *ex mero motu* during the following portion of the State's argument:

> Just to be clear, a break-in is making any sort of an opening in a dwelling house that allows you entry. And that can be by busting out a window. That can be by walking through an open door. But it's anything that causes an opening in that dwelling. Opening an unlocked door for a house that[] ain't yours is a break-in."

Defendant argues this is a misstatement of the law, and that the trial court should have intervened, even absent an objection from Defendant's trial counsel. "The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*." *Jones*, 355 N.C. at 133, 558 S.E.2d at 107.

In North Carolina, the "breaking" element of burglary is defined as "any act of force, however slight, used to make an entrance 'through any usual or unusual place of ingress, whether open, partly open, or closed.' " *State v. Eldridge*, 83 N.C. App. 312, 314, 349 S.E.2d 881, 882-83 (1986) (quoting *State v. Jolly*, 297 N.C. 121, 127-28, 254 S.E.2d 1, 5-6 (1979)). The State's articulation of the law was not so "grossly improper" as to warrant reversal. Although perhaps imprecise, only the State's suggestion that "walking through an open door" constitutes breaking gives us pause. If by "open" the State meant "unlocked," then the statement is an accurate statement of the law. However, even if "open" can be construed as a synonym for "ajar," we cannot conclude such an isolated misstatement of the law was so "grossly improper as to warrant reversal," particularly in light of State's subsequent statement that a break-in is "anything that *causes* an opening in that dwelling." Accordingly, we find no error.

## E. Shackling

**[5]** Defendant next argues he was denied a fair trial by virtue of his visible shackling during the habitual felon phase of the trial. We do not address this argument because we vacate Defendant's habitual felon conviction. On remand, the trial court should review our recent decision addressing shackling in *State v. Stanley*, No. COA10-1352, ___ N.C. App. ___, ___ S.E.2d ___ (July 19, 2011) (applying N.C. Gen. Stat. § 15A-1031 (2009)).

### IV. Conclusion

We find no error with the trial court's instructions on the sexual battery and burglary charges. We find no error in the trial court's handling of the State's closing argument. We do, however, find error in Defendant's kidnapping conviction and grant him a new trial on that charge. Consequently, we also vacate Defendant's habitual felon conviction.

No error in part; new trial in part; vacated in part; remanded.

Judges STROUD and THIGPEN concur.